GASKINS, J.
12Ewell Dewitt Bickham appeals from a trial court judgment which designated his former wife, Shauna Kay Bickham, as the domiciliary parent of their six-year-old son, set child support, granted the father the tax credit for the child every third year, and awarded interim spousal support. We affirm.
FACTS
The mother and the father were married in November 2004. It was the second marriage for the mother. She and her first husband had a son, J.S. (born in August 1992). The father had been married three times prior to his marriage to the mother. He and his third wife had two sons: D.B. (born in June 1998) and T.B. (born in August 1999). Together, the parties had one son, C.B. (born in February 2005).
During the marriage, the couple lived in East Feliciana Parish. The father worked as an emergency room physician while the mother was a stay-at-home mother carry *953 ing for her sons and her stepsons.[1] The couple separated several times during the marriage; their final separation occurred in September 2007 at which time the mother moved to Richland Parish with C.B. and J.S. The parties shared physical custody of C.B., alternating one-week periods.
In October 2007, the mother filed for divorce in Richland Parish, seeking sole custody of C.B., among other things. In November 2007, following a disagreement over custody, the mother filed for temporary sole custody; the parents were awarded temporary shared custody by which they alternated one-week custody periods. The parents agreed that neither parent would have overnight guests of the opposite sex in the child’s presence. In December 2007, the parents entered into an interim stipulated judgment by which shared custody was continued and the father agreed to pay child support of $890 per month. In lieu of interim spousal support, he also agreed to maintain the mother and C.B. on his medical insurance and maintain the mother’s car insurance and cell phone contract.
|3In August 2009, the father filed a rule for ex parte custody and restricted visitation. He also sought to restrict anyone other than immediate family members from being present during the mother’s periods of custody and to prohibit anyone from using corporal punishment on C.B. The father alleged that the mother had a male companion living in her home, that he slept in the same bed with the mother and C.B., and that she allowed the man to spank C.B. The only portion of the request that the trial court granted was that the mother’s older son, J.S., be the only other person living with her when C.B. was present. In October 2009, the father filed another request for sole custody, this time alleging that the mother was inadequate in her supervision of her older son. He further asserted that the wife of the mother’s alleged boyfriend had an order of protection against the man.
The case was tried on November 12, 2009, March 26, 2010, and March 31, 2010.[2] At the end of trial, the trial court allowed the parties additional time to submit financial information; this included an option to depose the parties if needed. On July 16, 2010, the trial court issued a thorough and thoughtful 63-page written opinion giving reasons for judgment. The court found that both parents failed to prove by clear and convincing evidence that sole custody was in the best interest of the child. Given the distance between the parents’ residences (more than two hours by car) and the child being of age to attend kindergarten in the fall of 2010, continuing shared equal custody was not an option. Joint custody was awarded with the mother being the domiciliary parent. The trial judge painstakingly evaluated all of the La. C.C. art. 134 factors in reaching this decision. Among the reasons given for this ruling were the fact that she had been the child’s primary caregiver for most of his life, her greater willingness to cooperate with the other parent, her ability to give the child her full attention, and previous incidents of physical and verbal abuse by the father against his two older sons. Noteworthy facts mentioned in the trial court’s opinion include the following: C.B. enjoys close relationships with all three of *954 his half-brothers; each parent lost custody of the child/children from a former marriage due to allegations of misconduct (the mother for facilitating inappropriate behavior by J.S. and the father for physical and l4verbal abuse of his older sons); and the father’s older sons have been in counseling since 2004 because of the bitter conflict between their parents. Also, the father hired private detectives to obtain evidence of the mother’s alleged romantic relationships, and the father apparently does not admit to any personal shortcomings in the failures of his four marriages.
On the issue of interim spousal support, the court awarded $800 per month from November 12, 2007, to June 15, 2010; the father was allowed to deduct any amounts he spent during that period on the mother’s cell phone contract and medical and auto insurance. However, finding that the spouses were mutually at fault, the court denied the mother final periodic support. The father’s monthly child support was set at $1,200; however, it was reduced to $800 per month in June and July and $1,000 in August, since C.B. would be spending most of the summer with the father. On the issue of federal and state tax credits for C.B., the court ordered a rotation whereby the father received this benefit every third year. Judgment was signed September 15, 2010.
The father appeals.
CHILD CUSTODY

Law

The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Semmes v. Semmes, 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. Joint custody is preferred unless it is shown by clear and convincing evidence that sole custody is in the best interest of the child. La. C.C. art. 132. Custody determinations are made on a case-by-case basis. Robert v. Robert, 44, 528 (La.App.2d Cir.8/19/09), 17 So.3d 1050, writ denied, 2009-2036 (La.10/7/09), 19 So.3d 1.
The court is to consider all relevant factors in determining the best interest of the child. La. C.C. art. 134. The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134,[3] but should decide each case on its own facts in light of those factors. Semmes, supra. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Semmes, supra; Robert, supra.
The trial court has vast discretion in deciding matters of child custody *955 and visitation. Slaughter v. Slaughter, 44,-056 (La.App.2d Cir.12/30/08), 1 So.3d 788; Semmes, supra. This discretion is based on the trial court’s opportunity to better evaluate the credibility of the witnesses. Slaughter, supra; Semmes, supra; McCready v. McCready, 41,026 (La.App.2d Cir.3/8/06), 924 So.2d 471. Therefore, its determination will not be disturbed absent a clear showing of an abuse of discretion. Semmes, supra. As long as the trial court’s factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not reverse even though convinced it would have weighed the evidence differently if acting as the trier of fact. Slaughter, supra.

Discussion

The trial court carefully considered each of the factors set forth in La. C.C. art. 134. It found that the mother had the advantage in four areas (the love, affection, and other emotional ties between each party and the child; the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; and the responsibility for the care and rearing of the child previously exercised by each party), the father in three areas (the capacity and disposition of each party to provide the child with food, clothing, medical care and other material needs; the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; and the permanence as a family unit, of the proposed custodial homes), and that neither could claim superiority in three areas (the moral fitness of each party, insofar as it affects the welfare of the child; the mental | fiand physical health of each party; and the home, school and community history of the child). Because of his age, the child’s preference was not a factor, and the distance between the respective residences of the parties mandated that shared custody was no longer an option for this now school-age child.
Neither parent presented clear and convincing proof that sole custody was in the best interest of the child. The evidence overwhelmingly demonstrated that the child was thriving in the shared custody of his parents. Therefore, the issue before us is whether the trial court abused its discretion in designating the mother as the domiciliary parent under a joint custody plan.
The father essentially argues that he is superior to the mother in every area. In particular, he attacks the mother’s moral fitness, accusing her of sexual relationships with multiple men. However, the father’s proof on this issue is scant. His main evidence came from a private investigator and the wife of an alleged paramour, who were — at best — poor witnesses. Even assuming arguendo that the mother had any such relationships, there is nothing in this record to suggest that the child’s welfare has been adversely affected as a result. See Hobbs v. Hobbs, 42,353 (La.App.2d Cir.8/15/07), 962 So.2d 1148. The father also assails the mother’s supervision of her elder son, J.S. However, the evidence demonstrated that this young man is a hard worker and a good student who was about to commence his college education. After he was emancipated at the instigation of his father, he opted to live with his elderly paternal grandparents to help care for them instead of living with his mother, with whom he has a close and loving relationship. Most importantly, J.S. has a close and loving relationship with his younger half-brother, C.B., and there is nothing *956 in this record to suggest that anything related to J.S. has adversely affected the boy. Furthermore, the trial court was apparently satisfied that the mother had not condoned any inappropriate behavior by J.S.
The factor which the father claims weighs heaviest in his favor is the fact that if he is named domiciliary parent, C.B. will grow up with and attend school with the father’s two older sons, who are closer in age to him than J.S. The record shows that C.B. has good relationships with all three of his 17half-brothers. No evidence established that it would be in C.B.’s best interest to live with his father, where he would be one of three children vying for attention, as opposed to living with his mother, where he would be the recipient of his mother’s undivided attention while J.S. is away at college. Even a psychologist called by the father who testified that C.B.’s brothers are important to him and he should spend time with them declined to make a recommendation as to custody because she had not conducted a full custody evaluation.[4] The trial court recognized the importance of C.B. spending time with his brothers and endeavored to craft a joint custody plan which would afford him such time.
The trial court had the advantage of viewing the .witnesses. It carefully weighed and considered their testimony before concluding that the best interest of C.B. would be served by naming his mother as his domiciliary parent. In so deciding, the trial court emphasized several important factors: the mother’s role as C.B.’s primary caregiver for much of his young life and her ability to provide him with consistency of care; her greater willingness to cooperate with the father; her ability to offer C.B. her full attention in a loving and comfortable home environment; and the father’s past incidents of unduly harsh discipline of his older sons. Although the father denied these incidents and argued that the allegations were irrelevant to C.B.’s custody, the evidence demonstrated that the custody situation involving the older boys was contentious at best and had resulted in a continuing need for psychological counseling for these children.
We find no abuse of the trial court’s discretion. Accordingly, we affirm the trial court’s designation of the mother as domiciliary parent under a joint custody plan.
CHILD SUPPORT

Mother’s Income

La. C.C. art. 227 provides that parents, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children. The obligation to support their children is conjoint upon the | ^parents and each must contribute in proportion to his or her resources. Kirkpatrick v. Kirkpatrick, 41,-851 (La.App.2d Cir.1/24/07), 948 So.2d 390.
The Louisiana Child Support Guidelines set forth the method for implementation of the parental obligation to pay child support. La. R.S. 9:315, et seq.; Kirkpatrick, supra. The guidelines are intended to fairly apportion between the parents the mutual financial obligation they owe their children in an efficient, consistent and adequate manner. Child support is to be granted in proportion to *957 the needs of the children and the ability of the parents to provide support. La. C.C. art. 141. An appellate court is not to disturb the trial court’s factual findings absent an abuse of its discretion or manifest error. Resell v. ESCO, 549 So.2d 840 (La.1989); Kirkpatrick, supra.

Discussion

The father contends that the trial court erred in calculating child support because it did not consider the mother’s “true” income. He maintains that the mother’s bank statements — which are included in the record as a proffer — showed deposits for 2009 averaging more than $5,000 per month. Although given the option of deposing the mother on financial matters after the trial, the father elected not to do so. Consequently, the record fails to demonstrate whether these funds were income.
In setting child support, the trial court utilized the figures from the parties’ respective income tax returns. It then allowed the father a downward deviation based upon his obligation to support his two older sons. It further reduced the father’s child support obligation for C.B. during the summer months when the child would be primarily residing with the father. We find no error in the trial court’s calculation of child support in the instant case.
TAX CREDITS

Law

In relevant part, La. R.S. 9:815.18 provides:
A. The amounts set forth in the schedule in R.S. 9:315.19 presume that the custodial or domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, the claiming of dependents for federal and state income tax purposes shall be as provided in Subsection B of this Section.
|qB. (1) The non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the federal and state tax dependency deductions if, after a contradictory motion, the judge finds both of the following:
(a) No arrearages are owed by the obli-gor.
(b) The right to claim the dependency deductions or, in the case of multiple children, a part thereof, would substantially benefit the non-domiciliary party without significantly harming the domiciliary party.
Both elements of La. R.S. 9:815(B)(1) must be satisfied in order for the nondomiciliary parent to be entitled to the tax dependency deduction. Harrington v. Harrington, 43,373 (La.App.2d Cir.8/13/08), 989 So.2d 838. If there is no evidence to prove that the income tax deduction would substantially benefit the nondomiciliary parent, without substantially harming the domiciliary parent, the non-domiciliary parent has not proven entitlement. See Neill v. Neill, 33,398 (La.App.2d Cir.6/21/00), 764 So.2d 235; Semmes, supra; Harrington, supra.

Discussion

The father asserts that the trial court erred in awarding him tax credit for C.B. only every third year. He contends that as nondomiciliary parent, he should receive the tax benefit for the child every year because he would be paying more than two-thirds of the designated expenses associated with C.B. The mother argues that since the father, as nondomiciliary parent, failed to establish that the deduction would substantially benefit him and *958 that taking the deduction from the mother would not significantly harm her, he should not have been allowed to claim the boy even every third year.
In determining this issue, the trial court candidly admitted that it did not recall any evidence being presented on the issue of substantial benefit to the father and significant harm to the mother. It crafted its solution of rotating the tax credit in an attempt to be equitable to both parties.
Since no evidence was submitted to prove that the income tax deduction would substantially benefit the father as the non-domiciliary parent, without substantially harming the domiciliary parent, the father is the one who has not proven entitlement. Accordingly, the trial court erred in allowing the father the deduction every third year. Since the mother did not |inappeal from the trial court judgment, we cannot grant her relief on this issue. Accordingly, we affirm the trial court judgment as to the awarding of the tax credit.
INTERIM SPOUSAL SUPPORT

Law

In a proceeding for divorce, the court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. Ill and 113; Brown v. Brown, 44,989 (La.App.2d Cir.1/27/10), 31 So.3d 532; Kirkpatrick, supra.
The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Brown, supra. A spouse’s right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. Brown, supra. The needs of the wife have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband’s ability to pay. Brown, supra; Kirkpatrick, supra.
Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. Brown, supra.
The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion. Brown, supra; Kirkpatrick, supra. An abuse of discretion will not be found if the record supports the trial court’s conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. Brown, supra.
There is no requirement in the Louisiana Civil Code or our jurisprudence that the court must make a determination of fault prior to awarding interim spousal support. Interim support is based solely on the |nneed of the claimant, the non-claimant’s ability to pay, and the standard of living enjoyed during the marriage. Brown, supra.

Discussion

The father argues that the trial court erred in granting interim spousal support to the mother. Our review of the record reveals no such error. The trial court meticulously reviewed the financial evidence in the record and applied the *959 correct legal standard in awarding the mother interim spousal support from November 12, 2009, the first day of trial, until June 15, 2010,180 days after the judgment of divorce. The father was given appropriate credits for his payments of the mother’s health and car insurance and her cell phone plan pursuant to the interim stipulated judgment.
Accordingly, we affirm the trial court’s award of interim spousal support to the mother.
TIME RESTRICTIONS

Law

La. C.C.P. art. 1631(A) recognizes the court’s power to require that proceedings be conducted with dignity and in an orderly and expeditious manner and to control trial proceedings so that justice is done. The trial court has great discretion in directing the manner in which proceedings are conducted, and only upon a showing of a gross abuse of that discretion will the appellate court intervene. Youngblood v. Lee, 40,314 (La.App.2d Cir.11/2/05), 914 So.2d 1186, writ denied, 2006-0088 (La.4/17/06), 926 So.2d 522; Teague v. Teague, 44,005 (La.App.2d Cir.11/25/08), 999 So.2d 86.
In Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2d Cir.1993), unit denied, 623 So.2d 1340 (La.1993), this court set forth general guidelines to be followed by a trial judge who found it necessary to impose time limits on the presentation of evidence. In that case, we reasoned that a litigant has the right to present all evidence that he or she possesses with regard to a contested issue at trial if the evidence is relevant, admissible, and not cumulative. However, this right is limited by La. C.E. art. 403, regarding evidence where the probative value is substantially outweighed by undue delay and waste of time, and by the power granted to trial judges in La. C.C.P. art. 1631 to ensure that relevant, admissible, and noncumulative evidence is presented in such a way that time will not be unnecessarily | ^wasted. Due process does not mean litigants are entitled to an unlimited amount of the trial court’s time. This court then stated that in imposing time limits to carry out this objective, the trial court should consider the following: (1) before imposing time limitations in a case, the trial judge should be thoroughly familiar, through pretrial proceedings, with the claims of the parties, the proposed testimony and number of witnesses, and the documentary evidence to be presented; (2) if they are used, time limits should be imposed on all parties, before any party presents any evidence, and sufficiently in advance of trial for the litigants to prepare for trial within the limits imposed; (3) the trial judge should inform the parties before the trial begins that reasonable extensions of the time limits will be granted for good cause shown; (4) the trial judge should develop an equitable method of charging time against each litigant’s time limits; and (5) the trial judge should put all of his rulings regarding time limits and the reasons for the rulings on the record. Additionally, we held that these guidelines are not exclusive and do not cover all contingencies, and that the court should also use its common sense and sound discretion to ensure that relevant, admissible, and noncumulative evidence is presented in a timely fashion so that justice is done.

Discussion

Finally, the father contends that the trial court erred in placing time constraints on the presentation of evidence. In particular, he asserts that the time constraints placed on trial of the matter prevented him from cross-examining the mother on financial matters. We note at the outset that the father failed to contem *960 poraneously object to the time constraints — of which he was well aware — at trial. Although the court originally gave each side five hours in which to present evidence, it later opted to increase the time to six hours per side. Additionally, the parties were given alternatives to present additional evidence if necessary, i.e,, the option to depose witnesses and submit their depositions in lieu of live testimony; however, the father failed to avail himself of that opportunity.
Our review of the record reveals that the trial court utilized its common sense and sound discretion in formulating a workable timetable for l^the presentation of evidence in the instant case. Finding no abuse of the trial court’s great discretion, we reject the father’s argument on this issue.
CONCLUSION
We affirm the trial court judgment. Costs of this appeal are assessed to the father.
AFFIRMED.
STEWART, J., concurs with reasons.

. During the marriage, the mother traveled to Rayville every other week to exercise her right to joint custody of J.S.; C.B. accompanied her to Rayville during these periods.
The father became domiciliary parent of D.B. and T.B. in July 2006 after their mother moved to Ohio.

. In December 2009, the parties were divorced.

. The factors listed in La. C.C. art. 134 include: (1) the love, affection, and other emotional ties between each party and the child: (2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (3) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (4) the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; (5) the permanence, as a family unit, of the existing or proposed custodial home or homes; (6) the moral fitness of each party, insofar as it affects the welfare of the child; (7) the mental and physical health of each party; (8) the home, school, and community history of the child; (9) the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; (10) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (11) the distance between the respective residences of the parties; and (12) the responsibility for the care and rearing of the child previously exercised by each party.

. This psychologist praised both parents and noted that C.B. appeared to be adjusting to the changes in his custody better than the father's two older sons were handling their custody situation. She attributed this to the parents’ efforts to avoid conflict in C.B.’s presence. She also praised the mother for her efforts in conjunction with issues related to the father’s two older sons.