MOORE, J.
 

 1, Pursuant to Jeams Brown’s motion for a reduction or termination of interim spousal support and Angelique Brown’s rule for contempt in this divorce action, a hearing was held on January 28, 2009. By judgment in chambers on April 23, 2009, and signed on May 27, 2009, the court rendered judgment ordering Mr. Brown to pay $500 monthly interim spousal support, thereby denying the motions to reduce or terminate the $500 spousal support previously fixed by interim order. The court also held that Mr. Brown was currently in arrears for payment of interim support, fixed the arrearage at $7,000, and held Mr. Brown in contempt for failing to pay a $2,500 arrearage previously ordered by the court. It imposed a sentence of 90 days in the Ouachita Parish Jail with execution of sentence suspended pending Mr. Brown’s performance of the support obligations and payment of the arrearage at a rate of $500 per month in addition to the support obligation. Additionally, Mr. Brown was cast in judgment for all costs and $1,200 in attorney fees. Mr. Brown appealed. For the following reasons, we affirm.
 

 The sole issue in this appeal is whether the trial court abused its discretion in awarding Angelique Brown $500 per month interim support. Brown contends that the trial court erred in awarding interim spousal support and fixing the amount of support at $500; the trial court erred by not making a finding of fault before awarding her interim spousal support; and, the trial court erred when it included consideration of Mr. Brown’s separate property in determining his ability to pay when only the proceeds from his rental property were used during the marriage.
 

 | .FACTS
 

 Angelique and Jeams Brown were married on May 3, 1997. The couple had five children, one of whom perished in a house fire. Angelique Brown filed this petition for divorce pursuant to La. C.C. art. 102 on October 17, 2006. Mr. Brown filed an answer and reconventional demand seeking sole custody of the children and recognition of a prenuptial separate property agreement. The record does not show that a rule or motion to obtain a final divorce judgment has ever been filed, or that a divorce judgment has been rendered.
 

 The court subsequently issued a hearing officer conference (“H.O.C.”) order because of several disputed issues between the parties. In the first H.O.C. report, hearing officer Lisa Rogers Trammell reported that Mr. Brown verbally stated that he made a profit of approximately $30,000 per year ($2,500 per month) from his rental properties. He supplied no documentation, but said that he was reconstructing his business records with H & R Block. These records were allegedly lost in a fire.
 

 The hearing officer reported that Jeams said his living expenses were approximately $1,575 per month, leaving him a surplus of approximately $1,000 per month. By comparison, Angelique’s monthly living expenses were determined to be $1,640 per month. She was unemployed at the time. The hearing officer concluded that Jeams
 
 *535
 
 should pay Angelique $500 per month in interim support. Jeams filed an objection to the award.
 

 A second H.O.C. was held on November 27, 2006, to review,
 
 inter alia,
 
 Jeams’s financial documentation. The report notes that Jeams supplied |3only an income tax return from 2005 showing an income of $8,259 from three rental houses, although counsel advised that he owned 14 houses, of which four were currently rented. The hearing officer determined to continue using $30,000 as a reasonable income figure for Jeams, and recommended no changes in the interim support award. • The court adopted the these recommendation as its interim order dated December 5, 2006.
 

 On February 13, 2007, Angelique filed a rule for contempt of court for failing to make the monthly payments and other violations of the interim order. The rule alleged that Jeams was in arrears for over $2,000. After a hearing before the court on March 26, 2007, the court rendered judgment on May 2, 2007, finding that Mr. Brown was not in contempt of court, but the court found him to be $2,500 in arrears and ordered him to pay $500 per month interim support.
 

 Mr. Brown filed a motion to reduce interim spousal support and to terminate interim spousal support on May 16, 2008, and an objection to the H.O.C. report on May 21, 2008, wherein he disagreed with,
 
 inter alia,
 
 the recommendation that he be ordered to pay spousal support and the amount of support to be paid. The court, however, issued an interim order adopting the May 16, 2008, hearing officer recommendations on June 2, 2008.
 

 Angelique filed a second rule for contempt on November 19, 2008, again alleging that Mr. Brown was not paying the court-ordered spousal support. An evi-dentiary hearing on the matter of interim spousal support was set and heard on January 28, 2009. It is this ruling that is the subject of Mr. Brown’s appeal.
 

 | ¿DISCUSSION
 

 By his first assignment of error, Mr. Brown contends that the trial court erred in finding that he should pay $500 monthly in interim support based upon a determination that he made $30,000 per year income. Mr. Brown’s other two assignments,
 
 ie.,
 
 that the court should have determined fault before awarding interim support, and that the court erred by looking to his separate property as a “means” by which he is able to pay interim support, also pertain to the finding that Mr. Brown is responsible for interim spousal support fixed at $500 per month.
 

 The statutory grounds for interim spousal support are La. C.C. arts. Ill and 113.
 
 Loftice v. Loftice,
 
 2007-1741 (La.App. 1 Cir. 3/26/08), 985 So.2d 204.
 

 In a proceeding for divorce, the court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. Ill and 113;
 
 Kirkpatrick v. Kirkpatrick,
 
 41,851 (La.App. 2 Cir. 1/24/07), 948 So.2d 390. The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce.
 
 Id.; Hitchens v. Hitchens,
 
 38,339 (La.App. 2 Cir. 5/12/04), 873 So.2d 882,
 
 citing Defatta v. Defatta,
 
 32,636, 32,637 (La.App. 2 Cir.2/1/00), 750 So.2d 503, and
 
 Reeves v. Reeves,
 
 36,259 (La.App. 2 Cir. 7/24/02), 823 So.2d 1023. A spouse’s right to | sclaim interim periodic support is grounded in the statutorily im
 
 *536
 
 posed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation.
 
 McAlpine v. McAlpine,
 
 94-1594 (La.9/5/96), 679 So.2d 85;
 
 Kirkpatrick, supra.
 
 The needs of the wife have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband’s ability to pay.
 
 Kirkpatrick, supra.
 

 In order to demonstrate need for interim periodic spousal support, the claiming spouse has the burden of proving that he or she lacks sufficient income, or the ability to earn a sufficient income, to maintain the standard of living that he or she enjoyed during the marriage.
 
 Kirkpatrick, supra; Clark v. Clark,
 
 84,314 (La.App. 2 Cir. 11/1/00), 779 So.2d 822,
 
 writ denied,
 
 00-3196 (La.1/12/01), 781 So.2d 563,
 
 citing Thomey v. Thomey,
 
 33,000 (La.App. 2 Cir. 4/7/00), 756 So.2d 698.
 

 Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support.
 
 Loftice v. Loftice, supra.
 
 If the needs of the claimant spouse surpass the ability of the other spouse to pay, interim spousal support should be fixed at a sum that will as nearly as possible be just and fair to all parties involved.
 
 Id.
 

 In assessing a spouse’s ability to pay, the court must consider his or her means. “Means” includes any resource from which the wants of life may be supplied, requiring an assessment of the entire financial condition of the payor spouse.
 
 Kirkpatrick, supra; Loftice, supra.
 
 “Entire financial [(¡condition” is not limited to income, but also includes any resource from which his or her needs can be supplied, including income from labor or services performed, physical property, income from such property, and a spouse’s earning capacity.
 
 See Kirkpatrick, supra; Loftice, supra.
 

 The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion.
 
 Kirkpatrick, supra,.
 
 An abuse of discretion will not be found if the record supports the trial court’s conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay.
 
 Kirkpatrick, supra; Clark, supra; Thomey, supra.
 

 We find no error or abuse of discretion in the award and amount of interim spousal suppoi't. First, Angelique clearly established her need for interim support, inasmuch as she is unemployed. Although Mr. Brown has consistently insisted that he cannot afford to pay spousal support, we agree with the findings of the hearing officer and the trial court that he has sufficient means to make the required payments. Importantly, Brown has never provided any business records, claiming they were destroyed in a house fire. He has provided only an income tax return showing an income of a little over $8,000 and a list of expenses he has incurred over a two-year period.
 

 The record, however, shows Mr. Brown owns a substantial number of houses (somewhere between 9 and 14) and other immovable property. He apparently receives income through renting the houses he owns, as well as 17timber sales. He has also recently received cash for some FEMA claims for hurricane damage, although he insists this money was used to make repairs on the property. Simply stated, Mr. Brown has not adequately submitted proof of his actual income and assets. Accordingly, this assignment is without merit.
 

 
 *537
 
 By his second assignment of error, Mr. Brown contends that the trial court erred by not making a finding of fault before awarding interim spousal support.
 

 There is no requirement in the Civil Code or our jurisprudence that the court must make a determination of fault prior to awarding
 
 interim
 
 spousal support. Interim support is based solely on the need of the claimant, the non-claimant’s ability to pay, and the standard of living enjoyed during the marriage. La. C.C. art. 113.
 
 See, e.g., Skannal v. Skannal,
 
 25,467 (La.App. 2 Cir. 1/19/94), 631 So.2d 558,
 
 unit denied,
 
 94-0697 (La.5/13/94), 637 So.2d 1067 (alimony
 
 pendente lite
 
 does not depend on the merits of the divorce suit and the obligation to pay alimony
 
 pendente lite
 
 does not terminate until the divorce is final; the support obligation continues even if the issue of fault, and not the judgment of divorce, is appealed). The duty to pay interim spousal support arises out of the mutual duty of support married persons owe each other. La. C.C. art. 98;
 
 Kirkpatrick, supra.
 

 Finally, Mr. Brown contends that the trial court erred in considering his separate property in determining his ability to pay interim support, since the couple used only his rental income during the marriage. We also observe that there is a prenuptial agreement in the record executed by the [ 8couple prior to the marriage in which they renounced the community of acquets and gains provided for in the La. Civil Code. They also declare that they are going to live under a separate property regime and renounce “alimony pendente lite.”
 

 First, the agreement to renounce alimony
 
 pendente lite
 
 is null and void. The Louisiana Supreme Court held in
 
 Holliday v. Holliday,
 
 358 So.2d 618, 620 (La.1978), that prenuptial agreements in which a spouse waives his or her right to alimony
 
 pendente lite
 
 in the event of separation are null and void as against public policy. Alimony
 
 pendente lite,
 
 of course, is now called interim spousal support.
 
 Loftice, supra.
 

 Regarding the trial court’s consideration of the equity in his rental properties and other separate assets in determining Mr. Brown’s ability to pay interim support, we noted above that the means of the payor spouse includes any resource from which the wants of life may be supplied, which requires an assessment of the entire financial condition of the payor spouse.
 
 Kirkpatrick, supra; Loftice, supra.
 
 This includes any resource from which his or her needs can be supplied, including income from labor or services performed, physical property, income from such property, and a spouse’s earning capacity.
 
 See Kirkpatrick, supra; Loftice stipra.
 
 During marriage, a spouse lacking sufficient income for maintenance is entitled to interim support regardless of whether the property regime is community or separate, and one cannot contract out of owing interim support.
 
 Vincent v. Vincent,
 
 2005-1175 (La.App. 4 Cir. 1/10/07), 949 So.2d 535,
 
 writ denied,
 
 2007-0608 (La.5/4/07), 956 So.2d 621.
 

 | ^Mr. Brown also claims that the hearing officer looked only at his income (and incorrectly determined it to be $30,000 per year) and failed to consider the other two elements,
 
 i.e.,
 
 the needs of Angelique and the standard of living she enjoyed during the marriage. He argues that because Angelique took all the furnishings and appliances from one of the houses that was not totally destroyed by fire, and because he has sole custody of the children right now, she does not need and is not entitled to support. He also contends that Angelique testified that the living conditions during the marriage were deplorable. Accordingly, he argues that Angelique is en
 
 *538
 
 titled only to be kept in poverty and deplorable conditions, obviating the need for interim support.
 

 This argument hardly merits consideration. The fact that Mr. Brown has custody of the children is of no consequence in determining the issue of interim spousal support. Nor does the allegation that Angelique took furnishings and appliances from one of the houses have any bearing on the question of spousal support. Finally, we note that “living conditions” are not necessarily indicative of the standard of living one enjoys during a marriage. The fact that the standard of living might have been poor is not a ground to avoid the duty of spousal support.
 

 Accordingly, for the reasons stated, the judgment of the trial court is affirmed at appellant’s cost.
 

 AFFIRMED.