GARRETT, J.
| Mames A. Evans appeals from a trial court judgment granting his wife, Terri *1094 Wilson Evans, interim spousal support of $2,800 per month. We affirm the trial court judgment.
FACTS
The parties were married in 2003. No children were born of the marriage. On June 18, 2013, Ms. Evans filed for divorce in Caldwell Parish, where she lives and the site of their last matrimonial domicile, alleging that she had recently discovered that her husband was conducting an “improper and inappropriate relationship” with another woman while working in Pennsylvania. She requested that she be awarded both interim and permanent spousal support and that she be maintained on her husband’s health and hospitalization insurance. She also requested that Mr. Evans be enjoined from alienating, encumbering, concealing, disposing of, or destroying community property; a temporary restraining order so providing was issued. A rule was set for August 14, 2013, on the request for interim spousal support and incidental matters.
Mr. Evans initially filed an answer in proper person in which he generally denied the allegations. Through counsel, he later filed a motion to continue the rule, another answer, and a reconventional demand in which he requested a restraining order to prevent his wife from selling, donating or alienating community property without court approval.
The hearing on interim spousal support was eventually held on October 2, 2013. The parties were the only witnesses to testify. At the outset, Mr. Evans tried to stipulate that he had the ability to pay $3,000 per 12month to preclude inquiry into his financial situation. However, Ms. Evans declined the stipulation due to the “great abundance of ability to pay” being a relevant factor in the matter.
Evidence was adduced that, following his recent promotion, Mr. Evans’ weekly gross pay had just risen from $4,500 as a pipeline foreman to $4,800 as an assistant superintendent. Ms. Evans produced evidence that she had monthly expenses of $2,779.45. At the conclusion of the testimony, the trial court awarded Ms. Evans interim spousal support in the amount of $2,800 per month and ordered that she be maintained on her husband’s health, hospitalization, dental and vision insurance. Additionally, the parties were mutually enjoined from alienating, encumbering, concealing, disposing of, or destroying community property. Judgment was signed on November 5, 2013.[1]
Mr. Evans appeals, arguing that his wife was voluntarily unemployed and that she failed to prove the standard of living during the marriage, a necessary element for establishing a spouse’s right to interim spousal support.
LAW
In a proceeding for divorce, the court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. Ill and 113; Bickham v. Bickham, 46,264 (La.App.2d Cir.3/2/11), 58 So.3d 950; Brown v. Brown, 44,989 (La.App.2d Cir.1/27/10), 31 So.3d 532.
The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be *1095 made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Bickham, supra; Gremillion v. Gremillion, 39,588 (La.App.2d Cir.4/6/05), 900 So.2d 262. A spouse’s right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. Bickham, supra; Brown, supra.
In order to demonstrate need for interim periodic spousal support, the claiming spouse has the burden of proving that he or she lacks sufficient income, or the ability to earn a sufficient income, to maintain the standard of living that he or she enjoyed during the marriage. Brown, supra. Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. Bickham, supra.
The trial court is afforded much discretion in determining an award of interim spousal support, and such a finding will not be disturbed absent a clear abuse of discretion. Shirley v. Shirley, 48,635 (La.App.2d Cir.10/16/13), 127 So.3d 935; Brown, supra. An abuse of discretion will not be found if the record supports the trial court’s conclusions about the needs | ¿of the claimant spouse or the means of the payor spouse and his or her ability to pay. Bickham, supra; Brown, supra.
DISCUSSION
Mr. Evans claims that the trial court abused its discretion in finding that Ms. Evans proved a need for interim spousal support. He contends that the trial court should have found that Ms. Evans was voluntarily unemployed and that she had a demonstrated earning capacity of $15 per hour. In support of his argument, he cites Clark v. Clark, 34,314 (La.App.2d Cir.11/1/00), 779 So.2d 822, unit denied, 2000-3196 (La.1/12/01), 781 So.2d 563, and Kirkpatrick v. Kirkpatrick, 41,851 (La.App.2d Cir.1/24/07), 948 So.2d 390.
In Clark, supra, the trial court found the wife was voluntarily unemployed for purposes of child support and that she failed to prove need for interim spousal support under La. C.C. art. 113, and this court affirmed. However, in that case, the wife had both a bachelor’s degree and a master’s degree, each in a different field. In the five years before the divorce proceedings, she held several different jobs as a teacher or guidance counselor. Additionally, .she had also been offered at least three teaching jobs which she declined. Furthermore, she had been given use of a family vehicle and community property for housing, all without financial obligation on her part.
In Kirkpatrick, supra, the wife had a master’s degree in counseling. Although she had not earned a steady income or seen clients consistently during the marriage, she had an office and was a licensed professional |scounselor. The trial court found that the wife was voluntarily underemployed and imputed income to her for purposes of calculating interim spousal support and child support. We affirmed, concluding that the evidence showed that the wife had the ability to immediately secure employment.
In support of her contention that she is entitled to interim spousal support, Ms. Evans cites Arrendell v. Arrendell, 390 So.2d 927 (La.App. 2d Cir.1980). Although rendered under the former alimony pen-dente lite law, Arrendell is mentioned favorably in the official revision comments to La. C.C. art. 113, which establishes the current interim spousal support provisions. In relevant part, Arrendell stated:
*1096 The purpose of alimony pendente lite is to temporarily, pending litigation, provide for the spouse who does not have sufficient income for his or her maintenance. Alimony pendente lite is ordinarily determined initially by summary proceedings within a few days after litigation is commenced. The award is usually effective from the date suit is filed. In a sense, it is designed to preserve and continue the status quo insofar as maintenance and support are concerned. It relates to facts as they have existed during the time the parties were living together and as they actually exist at the time the litigation commences, not to future possibilities and capabilities. Where one spouse is employed and has income and the other is not employed and has no income, the employed spouse is required to continue to provide for the maintenance of the unemployed spouse in this temporary situation. Where the spouses themselves have, during the marriage, assigned the role of wage earner to one and the role of homemaker to the other, fairness and practicality dictate that the wage earner spouse continue that role during the temporary period of litigation and adjustment. If both spouses are employed, then the income of both is to be taken into consideration. If neither is employed, then perhaps respective earning capabilities should be considered. Earning capability might be considered where a spouse has been regularly employed during the marriage but happens not to be employed at the very moment of trial of the alimony rule, and has the capability of securing employment immediately.
| fiUnIike the spouses in the Clark and Kirkpatrick cases, Ms. Evans is not highly educated. The evidence shows that she has only a high school education. While she worked as a secretary during the first few years of her marriage to Mr. Evans, she quit working at her husband’s behest so that she could accompany him around the country on his work travels. The evidence is undisputed that she has not been employed outside the home in the last eight years of the marriage. There is no definitive evidence of how much Ms. Evans earned when she worked as a secretary or how much she could make now, at the age of 51, after being out of the workforce for eight years. She lives in a rural area. Her husband did not contend at the hearing that her claimed expenses of approximately $3,000 per month were in any way unreasonable or excessive. The vehicle allotted to her — a 2012 Christmas gift from her husband — comes with a monthly note of almost $800.[2] Although counsel for Mr. Evans assails Ms. Evans’ credibility on several minor matters, it appears that the trial court found her to be a credible witness, and we find no abuse in the trial court’s discretion in so finding.
Mr. Evans argues that the trial court abused its discretion in finding that Ms. Evans proved the standard of living enjoyed by the spouses during the marriage. He cites Amos v. Amos, 47,917 (La.App.2d Cir.2/27/13), 110 So.3d 1243, in which this court reversed an award of interim spousal support in favor of a wife. That case presented a “very unique marital relationship” where the spouses never lived together during them marriage 17which lasted less than two and a half years. They apparently maintained completely separate lives and households in different cities. The record contained no evidence showing that the husband contributed anything to the wife’s standard of living or that her *1097 standard of living was altered by the end of the marriage.
The situation in the instant case is vastly different. The record contains ample proof of the higher than average standard of living enjoyed by the spouses during the marriage. Due to his pipeline employment, Mr. Evans earned approximately $20,000 per month, plus bonuses. (His 2012 bonus was $10,000.) Mr. Evans candidly admitted that they wanted for nothing, buying whatever they desired. In addition to the relatively new trucks driven by each spouse, they owned a Harley-Davidson motorcycle, a 1971 Corvette and a 2000 Jeep. They also purchased two and a half acres adjoining their home site.[3] Mr. Evans was able to afford a $55,000 Bristol Bay motor home which he used at his work site and to spend $22,000 building a shop at their home. He has a gun collection containing approximately 40 weapons. Furthermore, they were sufficiently well off for Ms. Evans to cease working — at her husband’s request — for most of the duration of their marriage without the couple suffering any apparent financial hardship.
Based on the evidence adduced in this case, we find that the trial court did not abuse its discretion in awarding $2,800 per month in interim spousal support to Ms. Evans.
| «CONCLUSION
The trial court judgment awarding Terri Wilson Evans interim spousal support of $2,800 per month is affirmed. Costs of this appeal are assessed to James A. Evans.
AFFIRMED.

. The judgment provided that the interim spousal support would begin on October 1, 2013, as opposed to the date of judicial demand. We note that Ms. Evans has not appealed the amount of the award or the effective date.

. The car note was the highest expense listed on Ms. Evans’ affidavit of monthly living expenses. Other expenses included: groceries, $450; track and Jeep insurance, $384.18; truck gasoline, $250; and land note, $238.01.

. The record indicates that Ms. Evans is paying the note on the land purchase.