NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-62


RANDALL K. TYLER

VERSUS

JOY RENEE HUTCHINS TYLER


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 256,328 C/W 256,333
HONORABLE GREG BEARD, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Van H. Kyzar, Judges.


AFFIRMED.

Charles O. LaCroix
LaCroix, Levy & Barnett, LLC
P. O. Box 1105
Alexandria, LA 71309-1105
(318) 443-7615
COUNSEL FOR PLAINTIFF/APPELLANT:
    Randall K. Tyler

Howell D. Jones, IV
Jones Law Firm
P. O. Box 14558
Alexandria, LA 71315
(318) 442-1515
COUNSEL FOR DEFENDANT/APPELLEE:
    Joy Renee Hutchins Tyler

**KYZAR, Judge.**

The plaintiff, Randall K. Tyler, appeals from a trial court judgment granting interim spousal support to the defendant, Joy Renee Hutchins Tyler, in the amount of $2,100.00 per month. For the following reasons, we affirm.

## DISCUSSION OF THE RECORD

Randall K. Tyler and Joy Renee Hutchins Tyler were married in Rapides Parish, Louisiana on December 29, 2007. No children were born of their marriage. On July 15, 2016, Randall and Joy both filed petitions seeking divorce from the other pursuant to La.Civ.Code art. 102.[1] As part of his petition, Randall requested that Joy have the use of the family home until a partition of the community property or 180 days after the divorce was finalized, whichever occurred first, subject to the trial court's determination regarding an award of rent. In addition to reciprocal requests for temporary restraining orders, Joy claimed she lacked sufficient income to support herself during the pendency of the divorce proceedings and requested an award of interim spousal support.

Following an August 29, 2016 hearing on a rule to show cause, the trial court granted a motion to consolidate the two matters under the docket number assigned to Randall's petition. It further awarded Joy the use of the matrimonial domicile and granted Randall the right to a rental offset for Joy's use of the matrimonial domicile once the parties' community property was partitioned. In addition to issuing reciprocal injunctions, the trial court ordered Randall to pay interim spousal support of $2,100.00 per month to Joy, subject to a credit for any payments made by him subsequent to the order's effective date of August 1, 2016.

---

[1] Joy's petition was filed under docket number 256.333 in Division F of the Ninth Judicial District. Randall's petition, which was filed approximately one hour earlier, was filed under docket number 256,328 in Division G of the court.

Finally, the trial court ordered Randall to maintain health insurance coverage on Joy until their divorce was finalized.

A written judgment was rendered by the trial court on October 31, 2016. In appealing this judgment, Randall argues that "[t]he Trial Court erred in awarding Interim Spousal Support to a spouse who did not demonstrate a need for support, and who had sufficient income and liquid assets to provide for all of her expenses."

## OPINION

In the recent case of *Brown v. Brown*, 50,833, pp. 4-5 (La.App. 2 Cir. 8/10/16), 200 So.3d 887, 891-92, the law applicable to interim spousal support awards was set out, as follows:

> In a proceeding for divorce, the court may award interim periodic support to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111, 113; *Hogan v. Hogan*, 49,979 (La.App.2d Cir.09/30/15), 178 So.3d 1013, *writ denied*, 15-2018 (La.01/08/16), 182 So.3d 953; *Evans v. Evans*, 49,160 (La.App.2d Cir.06/25/14), 145 So.3d 1093; *Bickham v. Bickham*, 46,264 (La.App.2d Cir.03/02/11), 58 So.3d 950.

> The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. *Evans, supra; Gremillion v. Gremillion*, 39,588 (La.App.2d Cir.04/06/05), 900 So.2d 262. A spouse's right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. *McAlpine v. McAlpine*, 94-1594 (La.09/05/96), 679 So.2d 85; *Hogan, supra; Evans, supra; Brown v. Brown*, 44,989 (La.App.2d Cir.01/27/10), 31 So.3d 532. The needs of the claimant spouse have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the payor spouse's ability to pay. *Amos v. Amos*, 47,917 (La.App.2d Cir.02/27/13), 110 So.3d 1243; *Hogan, supra; Bickham, supra.*

> In order to demonstrate need for interim support, the claimant spouse has the burden of proving that he or she lacks sufficient

2

income to maintain the standard of living he or she enjoyed during the marriage. *Hogan, supra; Evans, supra; Brown, supra.* Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. *Evans, supra; Amos, supra; Bickham, supra.* The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion, which will not be found if the record supports the trial court's conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. *Hogan, supra; Shirley v. Shirley,* 48,635 (La.App.2d Cir.10/16/13), 127 So.3d 935; *Bickham, supra.*

Joy, who is employed as a receptionist at $13.50 per hour, testified that she works approximately thirty-one hours a week and is paid every two weeks. She stated her work hours are 9:00 a.m. to 5:00 p.m., with a one-hour lunch break, Monday through Thursday and that her employer only works three hours on Friday. Her affidavit of income and expenses listed her monthly net income as $1,624.00, which she said was typical of most receptionist positions.

Joy testified that prior to her current employment, she worked with Randall at the company they started, Chemstar Energy Services. She stated that Randall, as president, owned 54% of the company and his net monthly income was approximately $10,000.00. She said he further receives a $1,200.00 monthly truck allowance and the company also pays for his fuel, cell phone, expenses, and health insurance. Joy testified that while employed by the company she performed administrative duties, including setting up the company's computer software, billing, and employee training. Although she was not paid initially, she stated the company eventually paid her $500.00 every two weeks.

Joy testified that during their marriage she and Randall had a joint checking account and a savings account. She stated Randall's paycheck was deposited into the joint account, out of which all of the matrimonial bills were paid. She said that she had free access to this account. Joy further estimated she and Randall

3

deposited approximately $800.00 per month into their savings account. After she began her current employment in September 2015, she stated that she opened a separate checking account and deposited all of her earnings into this account. She explained she and Randall traveled a lot during their marriage, taking cruises and visiting locations in Arkansas and Tennessee, and they saved her earnings for this purpose. She stated she had her own spending money and that she dined out, shopped, and went to movie theatres whenever she wanted.

Joy testified that she has remained in the matrimonial home, which has a monthly mortgage payment of $1,575.00 per month. She testified that her monthly expenses, which totaled $4,684.31, are as follows:

| 1. | Housing | |
| | Note/Rent | $1,575.00 |
| | Repairs | $ 50.00 |
| 2. | Food | $ 250.00 |
| 3. | Household supplies | $ 60.00 |
| 4. | Drug Bills | $ 30.00 |
| 5. | Health | |
| | Health & Hospitalization Insurances | $ 500.00 |
| | Dental Care/other medical expenses | $ 50.00 |
| 6. | Utilities: | |
| | Television | $ 90.00 |
| | Internet | $ 50.00 |
| | Gas/Electricity | $ 200.00 |
| | Water | $ 30.00 |
| | Telephone/Cellular | $ 70.00 |
| 7. | Clothing (new, laundry, etc.) | $ 50.00 |
| 8. | Grooming & Personal Items | $ 90.00 |
| 9. | Entertainment (movies, dining out) | $ 50.00 |
| 10. | Vacation (divided by 12) | $ 125.00 |
| 11. | Gifts (Christmas, birthday, etc. divided by 12) | $ 100.00 |

4

| 12. | Automobile | | |
|-----|------------|---|---|
| | Note | $ | 663.82 |
| | Fuel | $ | 120.00 |
| | Insurance | $ | 53.00 |
| | Repairs | $ | 50.00 |
| 13. | Transamerica (Life Insurance) | $ | 27.39 |
| 14. | Kubota (Lawnmower) | $ | 216.77 |
| 15. | Wells Fargo (Hot Tub) | $ | 183.33 |

Joy testified that based on a refund provided by her gas/electricity provider (CLECO), she currently did not have a utility bill. Based on these expenses, Joy requested an award of interim spousal support in the amount of $3,060.31 per month to make up the difference between her monthly income ($1,624.00) and her expenses ($4,684.31).

Despite her requests, Joy admitted Randall agreed to and was in fact paying all of the community debts, including her health insurance, until the divorce was finalized, except for her truck note, life and automobile insurance, cell phone bill, and any personal expenses she incurred. This included the mortgage, television and internet expenses, and the Kubota and Wells Fargo notes totaling $2,145.10. She further testified that she had two medical bills totaling $320.00 in July 2016, which she sent to Randall for payment at his request. Joy further admitted if Randall continued paying these items, she would not need interim spousal support for those corresponding amounts. She finally admitted she and Randall had agreed that he would pay all of her living expenses except for her car note, life and automobile insurance, and cell phone, but that the only thing they had not agreed to was that he would receive a credit for any amounts he paid. However, she testified she would need the amount requested if Randall failed to make these payments.

Joy also testified that prior to filing for divorce, she transferred approximately $8,600.00 out of her separate checking account before closing it. She admitted the $8,600.00 was community property, and she stated that she informed Randall that she would return half of that amount to him. She also admitted she removed $10,000.00 from their savings account, which she claimed was half of the total amount.

Randall testified that he does not have an ownership interest in Chemstar Energy Services, rather the company is owned by a group of investors in Lafayette, Louisiana. As president of the company, he stated he earns a monthly gross salary of $12,500.00, which after $3,770.10 in deductions, amounts to a net salary of $8,729.90 per month. Randall testified that he is also provided a monthly $1,200.00 truck allowance and that the company paid for his cell phone and per diems for travel, meals, and customer entertainment. He said the company also paid all of his health insurance, which for him and Joy totaled approximately $1,200.00 per month.

Randall testified that he told Joy after they filed for divorce he would pay all of the community obligations until either a partition of the community property occurred or the divorce became final. He stated that the only bill he asked Joy to assume was her cell phone. He said that he also asked her to send him the information so that he could pay her truck note and that her vehicle is insured under the policy covering their multiple vehicles.

Randall testified that the matrimonial home was located on his separate property, which he transferred into both of their names in order to obtain a mortgage to build the house. He stated that the house, which Joy is occupying, was last appraised for $242,000.00, and that he has paid the $1,600.00 mortgage

6

since he filed for divorce. Randall testified that he currently occupies a camper, which is located at the office of Chemstar Energy Services. He stated that the company pays the utilities for the camper, but that he will assume responsibility for the utilities and $850.00 in rent beginning September 1, 2016, since the company recently moved to Lafayette at the direction of the investors, who were also located in Lafayette.

In addition to the $1,600.00 mortgage and the $850.00 rent and utilities bill for the camper, Randall testified that his monthly expenses are as follows:

| 1. | Home Expenses | |
|---|---|---|
| | Mortgage or Rent (matrimonial home) | $1,600.00 |
| | Electricity (matrimonial home) | $ 225.00 |
| | Water (matrimonial home) | $ 30.00 |
| | Garbage (matrimonial home) | $ 30.00 |
| | Rent and Electricity for Camper (est) | $ 850.00 |
| 2. | Food and Household Supplies | |
| | Groceries and Supplies | $ 500.00 |
| | Lunches and Dining Out | $ 800.00 |
| 3. | Medical Expenses (not covered) | |
| | Medical | $ 200.00 |
| 4. | Insurance(s) | |
| | Life Insurance | $ 280.90 |
| 5. | Transportation Expenses | |
| | Gas and Oil | $ 150.00 |
| | Vehicle Loan (Joy's vehicle) | $ 700.00 |
| | Automobile Insurance (all vehicles) | $ 290.20 |
| 6. | Incidentals | |
| | Dish Network (matrimonial home) | $ 145.45 |
| | St. Jude | $ 50.00 |
| | Haircut | $ 40.00 |
| | Dry Cleaning and Laundry | $ 240.00 |
| 7. | Installment Payments | |
| | CFCU (Camper) | $ 300.00 |
| | CFCU (Motorcycle) | $ 438.00 |
| | CFCU (ATV) | $ 300.00 |
| | Kubota (Tractor) | $ 225.00 |
| | Wells Fargo (Hot Tub) | $ 200.00 |

Based on his net monthly income of $8,729.90 and his monthly expenses of $7,594.55, Randall testified that his monthly surplus was only $1,135.35.

In its oral ruling, the trial court held that Joy proved she was in need because her expenses exceeded her income and Randall was capable of paying interim spousal support enabling Joy to maintain the standard of living she enjoyed during their marriage. In reviewing the affidavit of income and expenses of each party, the trial court disallowed various expenses listed therein. In reviewing Joy's affidavit, it disallowed her expenses for healthcare insurance ($500.00) because Randall was ordered to maintain such insurance on her pending the outcome of their divorce. The trial court also disallowed the gas and electricity expense ($200.00) and the Kubota tractor note ($216.77), which left her need for interim spousal support at $2,143.54 per month. However, the trial court stated that the gas and electricity expense would only be disallowed as long as CLECO continued its refund to its clients. Once that stopped, the $200.00 expense would be added back to Joy's monthly expenses.

In reviewing Randall's affidavit, the trial court disallowed expenses for the matrimonial home based on Joy's occupation, which consisted of the mortgage ($1,600.00), the electricity bill ($200.00) (based on the refund), and the water and garbage bills ($60.00). It further disallowed his expenses for lunches and dining out ($800.00), Joy's truck note ($700.00), Dish Network ($145.00),[2] and dry cleaning and laundry ($240.00). After adding these amounts ($3770.00) back to his monthly surplus of $1,135.35, the trial court determined that Randall's monthly surplus was $4,905.35. Based on this surplus, the trial court awarded Joy interim spousal support in the amount of $2,100.00 per month, effective August 1, 2016,

---

[2] In determining Randall's monthly expenses, the trial court rounded this amount down to $145.00.

subject to a credit for payment of any of Joy's expenses made by Randall subsequent to that date.

Based on the record, we find no abuse of discretion in the trial court's award of $2,100.00 per month in interim spousal support to Joy. We further find no abuse of discretion in the trial court's refusal to include the $18,600.00 sum Joy removed from the couple's community accounts in determining whether her monthly income was sufficient to maintain her in the standard of living she enjoyed while married.

In awarding interim spousal support, a trial court may consider only the requesting spouse's income in determining the needs of that spouse. *Mouton v. Mouton*, 514 So.2d 528 (La.App. 3 Cir. 1987). Moreover, "[a] spouse is not required to deplete [her] assets or capital to be entitled to [interim spousal support]." *Id.* at 530. However, "the determination of means with which one spouse is to satisfy the alimony obligation toward the claimant spouse is not based solely on income but also on any resource from which the wants of life may be supplied, and the entire financial condition of the spouse owing such obligation must be examined." *Id.*

## DISPOSITION

Based on the foregoing, we affirm the judgment of the trial court awarding Joy Renee Hutchins Tyler $2,100.00 in monthly interim spousal support payments. The costs of this appeal are assessed to Randall K. Tyler.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.