STEPHENS, J.
Kiley Hubert King appeals two judgments by the Sixth Judicial District Court, Parish of Madison, State of Louisiana, in connection with an award of interim spousal support to his former wife, Amber Rae King. For the following reasons, we amend the trial court's judgment, and as amended, we affirm.
FACTS
Amber Rae King and Kiley Hubert King were married on August 7, 1999, and have two children from their marriage. On January 26, 2016, Amber filed for divorce pursuant to La. C.C. art. 102, claiming the couple established separate residences on January 22, 2016. In addition to other incidental relief, Amber made a claim for interim spousal support pursuant to La. C.C. art. 113.
Kiley responded with an answer and reconventional demand, wherein he sought a divorce from Amber on the grounds of adultery with Chad Ezell, a man she allegedly began cohabiting with upon the Kings' separation. He also claimed Amber was prohibited from receiving interim spousal support as a result of her cohabiting with Chad.
At the hearing on the divorce, Amber testified and admitted that she and Chad had been living together since January 27, 2016. Chad testified they had cohabited since early February, 2016. A witness confirmed Amber's claim of late January as the date the couple began cohabiting. The trial court granted judgment in favor of Kiley based on his request for divorce due to Amber's adultery. Additionally, the judgment (rendered in open court on May 24, 2016) made the "judicial determination" that Amber had been cohabiting with Chad.
On September 2, 2016, the trial court considered the issue of Amber's entitlement to interim spousal support. At the start of the proceeding prior to any evidence being taken, Kiley conceded his ability to pay Amber interim spousal support if ordered. Amber testified and submitted as an exhibit an affidavit where she claimed a list of monthly expenses in the amount of $16,433.00, which included the following:
*976 Dry Cleaning $400.00 Insurance $300.00 Hair & Makeup $1,000.00 Food $2,500.00 Medicine $200.00 Household Items $500.00 Rent on House $1,400.00 Entergy $400.00 Water $150.00 Fuel $1,200.00 Clothes $2,500.00 Maid $1,083.00 Atmos Energy $100.00 Travel School Games $1,200.00 Football, Dance & Cheer $1,000.00 Christmas Gifts $1,000.00 Vacation $1,000.00 Vehicle Maintenance $500.00
Many of the expenses were undocumented; however, she did submit to the court copies of the couple's bank statements for the prior year. On those bank statements she characterized expenditures as "personal and household expenses" or "farm" related. Although the bank accounts were designated "Farm Account," the vast majority of expenses appeared to be "personal and household expenses." As to her income, Amber noted that it varied because she was an hourly worker. She testified that her income was reflected by the deposits in the bank accounts. She did not submit any paystubs or a form W-2. Amber testified that based on the couple's spending (which she implied was reflected in the bank statements) and her list of expenses in her affidavit, she sought interim spousal support in the amount of $15,000.00 per month.
Considering her claim and what evidence was submitted, Amber was granted a total award of interim support for the period January 26, 2016, through May 24, 2016 (the date of the divorce), in the total amount of $15,800.00. The trial court set Amber's expenses at $5,850.00 per month, which it offset by her income of $1,900.00 per month. Thus, her net interim support award was $3,950.00 per month. This was reflected in a judgment rendered April 27, 2017. However, the trial court allowed Kiley time to make a request for offsets "for any advances he might have made for said support," which he did. After a subsequent hearing wherein additional evidence was considered, Kiley was granted an offset in the amount of $766.02 for automobile insurance payments he paid on behalf of *977 Amber.[1] The trial court issued its subsequent judgment on the issue of Amber's interim support on August 2, 2017. Both of these judgments have been appealed by Kiley.[2]
LAW
In a proceeding for divorce, the court may award interim periodic support to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111, 113 ; Brown v. Brown , 50,833 (La. App. 2 Cir. 08/10/16,) 200 So.3d 887, 891-92 ; Hogan v. Hogan , 49,979 (La. App. 2 Cir. 09/30/15), 178 So.3d 1013, writ denied , 2015-2018 (La. 01/08/16), 182 So.3d 953.
The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Evans v. Evans , 49,160 (La. App. 2 Cir. 06/25/14), 145 So.3d 1093 ; Gremillion v. Gremillion , 39,588 (La. App. 2d Cir. 04/06/05), 900 So.2d 262. A spouse's right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. Brown, supra . The needs of the claimant spouse have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the payor spouse's ability to pay. Brown, supra ; Amos v. Amos , 47,917 (La. App. 2d Cir. 02/27/13), 110 So.3d 1243 ; A. Brown v. J. Brown , 44,989 (La. App. 2 Cir. 01/27/10), 31 So.3d 532.
In order to demonstrate need for interim support, the claimant spouse has the burden of proving that he or she lacks sufficient income to maintain the standard of living he or she enjoyed during the marriage. Brown, supra ; Evans, supra . Once the claimant spouse has established need, the trial court must examine the ability of the payor spouse to provide support. Evans, supra .
The trial court is afforded much discretion in determining an award of interim spousal support, and such a finding will not be disturbed absent a clear abuse of discretion. Shirley v. Shirley , 48,635 (La. App. 2d Cir. 10/16/13), 127 So.3d 935. An abuse of discretion will not be found if the record supports the trial court's conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. Rockett v. Rockett , 51,453 (La. App. 2 Cir. 06/21/17), 223 So.3d 1227, 1234 ; Bickham v. Bickham , 46,264 (La. App. 2d Cir. 03/02/11), 58 So.3d 950.
DISCUSSION
Entitlement to Interim Support
In Kiley's first assignment of error, he argues the trial court erred in finding *978 that Amber was entitled to interim spousal support considering she had been cohabiting with Chad since January 27, 2016. As stated, the trial court determined that Amber was entitled to interim spousal support for the period of time between January 26 (the date she moved out) and May 24, 2016 (the date of divorce). Kiley argues the trial court's award of interim spousal support was erroneous because Amber was cohabiting with Chad beginning late January and, pursuant to La. C.C. art. 115, his obligation to pay was extinguished. Thus, Kiley maintains she should be completely unentitled to interim support. We disagree due to the clear and strict construction of article 115, which states:
The obligation of spousal support is extinguished upon the remarriage of the obligee, the death of either party, or a judicial determination that the obligee has cohabited with another person of either sex in the manner of married persons.
(Emphasis added).
The starting point in the interpretation of any statute is the language of the statute itself. M.J. Farms, Ltd. v. Exxon Mobil Corp. , 2007-2371 (La. 07/01/08), 998 So.2d 16, 27 ; In re Succession of Holder , 50,824 (La. App. 2 Cir. 08/10/16), 200 So.3d 878, writ denied, 2016-1694 (La. 12/16/16), 212 So.3d 1169. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9 ; M.J. Farms, Ltd., supra ; Bridges v. Bullock , 50,297 (La. App. 2 Cir. 2/19/16), 188 So.3d 280, 282, writ denied, 2016-0494 (La. 05/02/16), 206 So.3d 882. It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Guillory v. Pelican Real Estate, Inc. , 2014-1539 (La. 03/17/15), 165 So.3d 875, 877. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Id.
It is undisputed that Amber and Chad began cohabiting together approximately January 27, 2016, by Amber's own admission. However, article 115 requires a "judicial determination that the obligee has cohabited with another person" (emphasis added). The simple fact that Amber cohabited with Chad since the end of January is insufficient. What is determinative for the issue of interim support is when a judicial determination was made as to her cohabitation. In this instance, such a determination was not made until the parties went to court on the divorce and the trial court rendered its judgment on May 24, 2016. Although Kiley submits on appeal that Amber is unentitled to interim support for the entire period due to her cohabiting with Chad, the precise wording of article 115 makes clear that the obligation is extinguished only upon the judicial determination that she cohabited. The judicial determination was not made until May 24 and until that determination was made, the obligation was not extinguished. Therefore, Kiley's assignment of error on this issue is without merit.
Amount of Interim Support Award
In his second assignment of error, Kiley argues the trial court abused its discretion in determining that Amber was in need of interim support to maintain the standard of living to which she was accustomed. In determining Amber's interim support, the trial court was tasked with considering not only her need and Kiley's *979 ability to pay (which Kiley conceded to before the hearing's commencement), but also, Amber's standard of living during the marriage. In so doing, the trial court set Amber's expenses at $5,850.00 per month, which it offset by her income of $1,900.00 per month, resulting in a net interim support award of $3,950.00 per month, i.e. her need. After the subsequent offset hearing, the trial court reduced Amber's award by $766.02 for the vehicle insurance paid by Kiley. Kiley points to three items specifically where he believes the trial court erred: the assessment of Amber's income, the assessment of some expenses by Amber, and the effect of expense sharing with Chad.
The first order of business in determining interim support is a spouse's need. See Hitchens v. Hitchens , 38,339 (La. App. 2 Cir. 05/12/04), 873 So.2d 882. In order to demonstrate her need for interim support, Amber had the burden of proving she lacked sufficient income or the ability to earn a sufficient income to maintain the standard of living that she enjoyed during the parties' marriage. As to Amber's income, although she did not provide the trial court with paystubs or W-2 forms, the bank statements together with her testimony support the trial court's determination of her income. The fact that Amber is an hourly employee who works irregular hours makes her income an imprecise calculation, and the trial court's approximation of her monthly pay as $1,900.00, based on the records before it and Amber's testimony regarding her ability to earn, was not an abuse of discretion.[3]
As to the standard of living Amber enjoyed during the couple's marriage, their bank statements for the year preceding their divorce make clear that the couple had an extravagant standard of living-spending in a month what many families earn in a year. A rote articulation of those expenditures is unnecessary. Regarding Amber's standard of living, we initially observe that the trial court noted that many of Amber's submitted expenses were overestimated and they were disallowed. However, notably the purpose of interim support is so one spouse will not suffer a dramatic reduction in living standard while adjusting to an impending termination of the marriage. A. Brown v. J. Brown, supra . Clearly, that was the goal of the trial court.
Furthermore, while considering reasonableness to Kiley, after the initial judgment Kiley was allowed to show entitlement to offset any expense awarded, which he did at the subsequent hearing. Considering that the trial court utilized an itemization of expenses for calculating Amber's interim support, it is reasonable to conclude that Kiley should not be expected to pay certain expenses twice; thus the trial court allowed him an opportunity to present evidence of payment of certain expenses granted Amber. The offset amount for vehicle insurance in the amount of $766.02, as proven paid by Kiley, was within the trial court's discretion. The trial court also allowed Kiley an additional offset for Amber's health insurance, having originally assessed a $300.00 per month expense for that item. However, Kiley, although he claimed paying the health insurance, failed to submit precisely how much he had actually paid-obviously an amount which would be needed to calculate any offset. In the absence of his payment, the trial court's original judgment was not in error. On other expenses *980 disputed by Kiley, the trial court did not allow an offset for rent or a housekeeper and made the following observation at the offset hearing:
Well ... what the interim spousal support is for is to pay Amber for what she's lacking in her income during that period of time. Naturally she didn't have any maid if she didn't have the money to pay it, but her lifestyle prior to the break-up, she had a maid. So, I awarded her whatever it was per month for a maid. If she didn't have it, that's because she couldn't afford it at the time.... But there's no offset for that. Likewise, there's no offset for the rent.
Such a conclusion by the trial court was a proper application of the jurisprudence and not an abuse of discretion.
Finally, considering the testimony of the parties, we conclude that the trial court clearly abused its discretion in not allowing Kiley an offset for fuel after its initial allowance to Amber of $700.00 per month. Amber testified that she "was still on [Kiley's] gas card until May." However, she also testified that Kiley had put a limit on her charges and she was able to point to various gas charges on the bank statements. At the offset hearing, Kiley submitted the statements for the contested period, which proved that he paid the following charges:
01/24 $42.53 02/19 $50.01 02/23 $53.50 03/03 $57.00 03/13 $60.37 03/23 $59.58 03/30 $55.53 04/05 $61.02 04/20 $53.00 05/13 $58.00 05/23 $59.82 TOTAL $610.36
Thus, it appears that Kiley should have been entitled to an offset for any expenditures charged to his gas card and paid by him-the total amount of $610.36.
Kiley also argues that Amber's interim support should be reduced as a result of the expense-sharing she benefits from due to cohabiting with Chad. Although there is no jurisprudence on this precise issue regarding interim support and expense-sharing, the benefits of expense-sharing is a stated consideration in the related issue of child support, when the trial court "may" consider a new spouse's income and its benefit to reducing a party's expenses. Here, the trial court did consider the benefit Amber derived from expense-sharing in calculating Amber's interim support. In its reasons for judgment, the trial court specifically noted that Amber's expenses would be present regardless of Chad's contribution. That conclusion was not an abuse of discretion.
*981 The monthly amount of $5,850.00 awarded Amber by the trial court was a fraction of that regularly spent by the couple monthly, and it was not an abuse of discretion in light of her need and expenditures. However, clearly Kiley should not have to pay twice for any of Amber's expenses. Thus, in calculating her need, we conclude that the deduction for her income in the amount of $1,900.00 a month as well as the offset of $766.02 for her vehicle insurance was not an abuse of discretion. The trial court did abuse its discretion in failing to allow an offset for fuel in favor of Kiley in light of Amber's use of his fuel credit card in the total amount shown by Kiley to have been paid, $610.36. The judgments of the trial court are so amended to reflect that change.
CONCLUSION
For the foregoing reasons, the judgment in favor of Amber Rae King is amended, and as amended, affirmed. All costs of this appeal are to be shared equally by Amber and Kiley Hubert King.
AMENDED, AND AS AMENDED, AFFIRMED.

He was also granted an offset for the payment of Amber's health insurance; however, because the trial court could not determine that amount, Kiley was granted additional time to submit proof of payment. The record does not contain that amount.

Notably, Amber has brought an assignment of error on appeal, asserting that she should have been awarded $13,000.00 per month interim support; however, Amber has not appealed the judgments or answered Kiley's appeal. Therefore, she is not entitled to request any modification of the trial court's judgments. See La. C.C.P. arts. 2082 and 2133 ; Bowden v. Brown , 48,268 (La. App. 2 Cir. 05/15/13), 114 So.3d 1194, 1206.

Because Kiley conceded his ability to pay interim support, the record contains no evidence regarding his income.