Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,133-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ANGELA FISHER SILLS ASHLEY      Plaintiff-Appellee

versus

BRYAN RHETT ASHLEY      Defendant-Appellant

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 2018-211

Honorable Michael E. Lancaster, Judge

* * * * *

CREWS GRADY PLLC      Counsel for Appellant
By: Jami L. Crews
   Pamela Netterville Grady

JOHN SCOTT SARTIN      Counsel for Appellee

* * * * *

Before STEPHENS, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

In this matter, former spouses are litigating the award and amount of interim spousal support ordered by the trial court. The litigation in this matter has lasted longer than the 17-month marriage. The trial court awarded $101,596.52 as lump sum interim spousal support to the wife, recognizing her need, the ability to pay of her former husband, and an affluent lifestyle enjoyed during the brief marriage. The husband appealed, asserting numerous assignments of error regarding the proof of need by his former wife, his ability to pay, and amount of the interim spousal support fixed by the trial court. We affirm the finding of need on the part of the wife and the husband's ability to pay, and amend the amount of the lump sum interim spousal support award, and as amended, affirm.

## FACTS

After a lengthy relationship dating back to 2010, Bryan Rhett Ashley ("Bryan") and Angela Fisher Sills Ashley ("Angela") married on January 12, 2017, and lived as a married couple in Madison Parish, Louisiana. Prior to their marriage to each other, Bryan and Angela had successful businesses, assets, and adult children from prior marriages. Angela was the sole owner of real estate and a home in Raymond, Mississippi. Angela also owned a sod farm business in Raymond, Mississippi, and was a licensed real estate agent. Angela testified that prior to the marriage to Bryan, she liquidated her sod farm business and then moved into his home in Tallulah, Louisiana. After marrying Bryan, Angela maintained ownership of her house in Mississippi.

Sometime in August of 2016, prior to their marriage, Angela moved into Bryan's home in Tallulah, Louisiana, and began working for Bryan's business, Brushy Development Corporation d/b/a Tallulah Truck Stop. Bryan owns a number of companies, including a video poker business, as well as farm land in Texas and Louisiana in his individual capacity.

Prior to the marriage, Bryan paid Angela in cash for the work that she did for his businesses. It was after marrying Bryan that Angela began receiving a paycheck for the work performed. Angela earned a weekly wage of $447 for 20-25 hours of part-time work. She performed bookkeeping and payroll duties for the various businesses and monitored the video poker room and the convenience store at Tallulah Truck Stop. In May of 2017, Angela was named Secretary of Brushy Development Corporation.

Although Bryan was providing what he considered to be an enjoyable lifestyle for Angela, he apparently had concerns about her lavish spending habits in the months following the wedding ceremony, and he raised those concerns with Angela. In February of 2018, prior to their separation, Bryan prepared a handwritten, three-page document containing approximate figures related to Angela's spending, as well as the cost of her employment through his business, which was introduced at trial as "Plaintiff's Exhibit 2." Bryan claims that the document was prepared in order to address Angela's "overspending" and the amount that he spent to employ her. In effect, Bryan claims he was detailing for his new bride a pattern of spending that he did not support and would not continue to fund. Angela counters Bryan's claim and testified at trial that Bryan prepared the document for her after she complained about additional bookkeeping duties for which she was

responsible following the termination of another employee. Later, Bryan would rely on this list as an example of Angela's spending in effect going through the roof, while Angela would depict this level of expense to support her new lifestyle as a floor of necessary expenses and benefits of the marriage. Those positions were irreconcilable and remain so.

On September 29, 2018, the parties separated. Immaterial to the award of interim spousal support but relevant for other considerations, as to the grounds for divorce, Angela testified that she believed Bryan was engaging in an extramarital affair. Angela was distraught over the alleged affair and experienced depression and panic attacks as a result, which would be a factor in her ability to support herself after the parties separated. Bryan requested that Angela submit to a psychological evaluation to determine her ability to work, which was paid for by Bryan. The psychological evaluation report provided that Angela suffered from depression and panic disorders. The report also noted that at that time, Angela was capable of performing only part-time work due to her mental state resulting from the dissolution of her marriage. The trial court considered those circumstances in determining the amount of interim spousal support to which Angela would be entitled.

On October 15, 2018, Angela filed a petition for divorce, which included her request for an award of interim spousal support. On June 4, 2019, the trial court rendered the judgment of divorce; however, the parties have continued to litigate the issue of the award and amount of interim spousal support.

The principal considerations a court must consider regarding a request for an award of interim spousal support are set forth in La. C.C. art. 113, which provides in part:

**Art. 113     Interim Spousal Support**

A. Upon motion of a party, the court may award a party interim spousal support based on the need of that party, the ability of the other party to pay, any interim or final child support obligation, and the standard of living of the parties during the marriage.
…

The threshold of issues of "**need**" of the requesting party, "**ability to pay**" of the other party, and amount of support based on the "**standard of living of the parties during the marriage**" were addressed by the parties and the trial court below, and now form the basis of the various assignments of error on appeal.

On March 22, 2019, the first hearing was held on the issue of interim spousal support. On May 13 and 14, 2019, additional hearings were held on the issue, and the matter was taken under advisement after the parties requested time to file post-trial memoranda. During the pendency of this matter, new attorneys have enrolled on behalf of both parties, another attorney was terminated, and post-trial memoranda were filed by new counsel who did not participate in the trial. On November 12, 2019, Bryan filed a motion for new trial on some of the issues addressed in the course of litigation. In addition to numerous motions to continue, this matter was further delayed by the Covid-19 pandemic, and there was no meaningful progress of the case until a hearing on the motion for new trial was held on

August 21, 2020. At the conclusion of the hearing, the trial court denied the motion for new trial.

On September 11, 2020, the trial court issued a judgment, along with lengthy written reasons, on the issue of interim spousal support. Angela was awarded interim spousal support in the lump sum amount of $101,596.52, based upon her affidavit of living expenses that represented total monthly expenses of $8,223.94. The trial court rounded that number to $8,225 in making its calculations for the lump sum award for the 14-month period between filing for divorce and the six month period following the judgment of divorce.

In its reasons for judgment, relative to the issue of Angela's **need**, the trial court noted that she was financially independent prior to her marriage to Bryan, but upon marrying Bryan, she liquidated her interest in her family sod farm business. The trial court found that Angela had no savings or income other than $247 per week in unemployment compensation that she began receiving on January 25, 2019, and it assumed she remained unemployed while she was pursuing her certification in real estate appraisal, the educational cost for which was a component of the monthly living expenses submitted by Angela. The trial court further found that Angela had demonstrated an inability to work for some period of time due to her mental state as a result of the dissolution of her marriage. The trial court also found that no sufficient evidence had been presented to support Bryan's claims regarding Angela's access to Bryan's cash or that Angela received disbursements from her family's trust.

As to Bryan's **ability to pay**, the trial court found that financial statements in evidence showed that Bryan reported net assets of $20,400,000 as of January 30, 2017, and $17,442,500 on February 12, 2019. The trial court determined that Bryan regularly keeps upward of $30,000 in cash in his private safe for living expenses, and that he pays for many personal and household expenses through his various corporations and limited liability companies. The trial court noted that neither party argued that Bryan was not financially able to pay a reasonable amount of interim spousal support.

As to the **standard of living** enjoyed by the parties during the marriage, the trial court found that the couple enjoyed a comfortable lifestyle. The trial court noted that the couple's living expenses were charged to various credit cards, and the credit cards were paid by Bryan's various companies at each billing cycle. The trial court noted that the total amount listed on Angela's affidavit of income and expenses ($8,233.94 per month) was lower than her expenses listed in Plaintiff's Exhibit 2 ($11,425-$14,282 per month). The trial court also noted that Angela certainly could reduce or eliminate some of her expenses but acknowledged that her affidavit was representative of the lifestyle she enjoyed for the 17 months that she was married to Bryan.

The trial court concluded that Angela had shown a need for income of $8,225 per month as detailed in her affidavit of living expenses and was entitled to interim spousal support for the time period of October 15, 2018 (the date the petition was filed) through December 1, 2019 (approximately 180 days after the rendition of the judgment of divorce), in the lump sum amount of $101,596.52. This figure equaled $8,225 per month, less

Angela's unemployment benefits of $962 per month from January 25, 2019, through December 1, 2019. Bryan appeals the award of interim spousal support.

## LAW

As noted above, in a proceeding for divorce the court may award interim periodic support to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111, 113; *Brown v. Brown*, 50,833 (La. App. 2 Cir. 08/10/16), 200 So. 3d 887, 891-92; *Hogan v. Hogan*, 49,979 (La. App. 2 Cir. 09/30/15), 178 So. 3d 1013, *writ denied*, 15-2018 (La. 01/08/16), 182 So. 3d 953; *King v. King*, 51,942 (La. App. 2 Cir. 4/11/18), 247 So. 3d 973.

The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. *Evans v. Evans*, 49,160 (La. App. 2 Cir. 06/25/14), 145 So. 3d 1093; *Gremillion v. Gremillion*, 39,588 (La. App. 2 Cir. 04/06/05), 900 So. 2d 262. A spouse's right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. *Brown, supra*. The needs of the claimant spouse have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the payor spouse's ability to

7

pay. *Brown, supra*; *Amos v. Amos*, 47,917 (La. App. 2 Cir. 02/27/13), 110 So. 3d 1243; *A. Brown v. J. Brown*, 44,989 (La. App. 2 Cir. 01/27/10), 31 So. 3d 532.

In order to demonstrate need for interim support, the claimant spouse has the burden of proving that he or she lacks sufficient income to maintain the standard of living he or she enjoyed during them marriage. *Brown, supra*; *Evans, supra*. Once the claimant spouse has established need, the trial court must examine the ability of the payor spouse to provide support. *Evans, supra*.

The trial court is afforded much discretion in determining an award of interim spousal support, and such a finding will not be disturbed absent a clear abuse of discretion. *Shirley v. Shirley*, 48,635 (La. App. 2 Cir. 10/16/13), 127 So. 3d 935. An abuse of discretion will not be found if the record supports the trial court's conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. *King, supra*; *Rockett v. Rockett*, 51,453 (La. App. 2 Cir. 06/21/17), 223 So. 3d 1227, 1234.

Domestic relations issues, such as the determination of entitlement to spousal support, largely turn on evaluations of witness credibility. *T. King v. T. King*, 48,881 (La. App. 2 Cir. 2/26/14), 136 So. 3d 941; *Jones v. Jones*, 38,790 (La. App. 2 Cir. 6/25/04), 877 So. 2d 1061. The fact finder has the discretion to accept or reject, in whole or in part, the testimony of any witness. *T. King, supra*. Reasonable evaluations of credibility should not be disturbed on appeal. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

# DISCUSSION

Bryan asserts numerous assignments of error, with subparts, in his appeal of the trial court's ruling awarding Angela interim spousal support of $101,596.52, all of which focus on either Angela's need, his ability to pay, or the amount fixed based on the standard of living of the parties during the 17-month marriage. For purposes of clarity, and to avoid unnecessary duplication, we will address the numerous assignments of error by topic.

### *Angela's Need for Interim Spousal Support*

Bryan argues that the trial court abused its discretion in determining that Angela needed an award of interim spousal support. We disagree. His various assignments of error intertwine the three issues of Angela's need, his ability to pay, and the amount of the award necessary based on the standard of living enjoyed by the parties during the marriage. Relative to Angela's need, Bryan asserts the following assignments of error:

- The trial court erred in determining that Ms. Sills' need for interim spousal support, given the pervasive and documented issues with Ms. Sill's lack of credibility and her misrepresentations to the Court.

- The trial court erred in determining that Ms. Sills "had no savings" and "no income" other than her unemployment compensation she included on her Affidavit of Living Expenses and failed to impute assets to Ms. Sills which were clearly supported by the record.

- The trial court erred in not imputing income to Ms. Sills, given the psychological evaluation resulted in a recommendation she work part-time, as the record shows that Ms. Sills only worked part-time during the marriage.

- Ms. Sills failed to produce any documentation regarding any other sources of income or assets as mandated by La. R.S. 9:326.

Angela had the burden of proving that she lacked sufficient income or the ability to earn a sufficient income to maintain a comparable standard of

living that she enjoyed during the parties' marriage. During the 14-month time period covered by the retroactive interim spousal support award, Angela was unemployed, unsuccessfully looking for a job, or applying herself to her real estate studies. For the purposes of its award, the trial court assumed she remained unemployed during this period of time. Angela admitted to receiving loans from family, and she introduced evidence of multiple family loans that she received.

Angela also testified that she received unemployment benefits. She introduced documentary evidence of her unemployment benefits and the amounts she received, and the interim support awarded by the trial court correctly included an offset for those unemployment benefits in its calculations. The trial court also correctly noted that no other sources of income or assets of Angela's were proven by either party. Neither party fully complied with introducing evidence of income, among other things, and current counsel for parties were not involved in the trial of the matter so they are left to work with what is contained in the record.

Though Bryan alleged that Angela had access to funds from a family trust or a bank account that she owned with her father, no evidence was introduced to show that Angela received income from either source. As a result, based upon evidence which comprised a part of this record, the trial court's findings as to Angela's income were not manifestly erroneous. As such, the assignments of error regarding Angela's need are without merit.

***Bryan's Ability to Pay***

Bryan argues that the trial court erred in its determination of his ability to pay Angela, and was required to consider his entire financial condition. His assignments of error on this issue are as follows:

- The trial court erred in its determination of Mr. Ashley's Ability to Pay Ms. Sills, and was required to consider Mr. Ashley's entire financial condition.

- The trial court erred in concluding that Mr. Ashley kept upwards of $30,000 in cash for living expenses and utilizing that conclusion in its analysis of Mr. Ashley's ability to pay interim spousal support.

- The trial court erred in not considering the entire financial picture of Mr. Ashley in its "ability to pay" analysis as required.

Bryan argues that the trial court erred in determining that he had consistent access to $30,000 cash on a monthly basis, and in considering the cash as a factor in the determination of his ability to pay spousal support. Bryan asserts that cash that was set aside in his personal safe for business expenses only. The record is not clear as to whether the cash in Bryan's safe was exclusively used for business purposes. In considering Bryan's entire financial condition, addressed below, the trial court's decision to include Bryan's potential access to this specific $30,000 cash for personal use was not manifest error, and does not affect the trial court's ultimate conclusion that Bryan does have the ability to pay interim spousal support. A similar conclusion as to Bryan's ability to pay a lump sum interim spousal support award could be reached without the necessity of access to the $30,000 cash allegedly maintained.

In assessing a spouse's ability to pay, the court must consider his or her means and entire financial condition. Consideration of a party's entire financial condition is not limited to income, but also includes any resource

from which his or her needs can be supplied, including income from labor or services performed, physical property, income from such property, and a spouse's earning capacity. *Rockett, supra.* The record clearly supports the fact that Bryan has the ability to pay interim spousal support to Angela. The financial statements that Angela introduced into evidence showed that Bryan had a net worth of several million dollars, reflecting net assets of $20,400,000 as of January 30, 2017, and $17,442,500 on February 12, 2019. Further, Bryan failed to introduce any evidence that demonstrated an inability to pay. A willingness to pay does not bear on a former spouse's actual ability to pay.

Therefore, the trial court's determination, based upon the evidence and testimony comprising the record, that Bryan had the ability to pay Angela's interim spousal support was not manifestly erroneous or an abuse of discretion. The assignments of error regarding Bryan's ability to pay are without merit.

### Standard of Living and Amount of Interim Spousal Support

Before addressing the third consideration, that of the fixing of the award of interim spousal support, taking into consideration the standard of living of the parties during the marriage, we will first address mathematical errors contained in Angela's affidavit.

### Errors Contained in Affidavit of Living Expenses

In calculating the interim spousal support award, the trial court relied primarily on the affidavit of living expenses provided by Angela. Finding errors contained in that affidavit, which results in errors in the calculations of the trial court, we first address the contents of Angela's affidavit and the

calculations contained therein, which appear to be unintentional addition errors.

The affidavit, reproduced below, contains an itemized list of expense items, which column of expenses should equal the total represented at the bottom. That is not the case with Angela's affidavit, and the reliance by the trial court on this erroneous figure requires we identify those errors before addressing any specific items contained therein.

STATE OF LOUISIANA, PARISH OF OUACHITA
SIXTH JUDICIAL DISTRICT COURT

ANGELA FISHER SILLS ASHLEY    FILED:_____

VS. NO. 18-211

BRYAN RHETT ASHLEY    BY:_____
                DEPUTY CLERK OF COURT

### AFFIDAVIT OF LIVING EXPENSES

| | |
|---|---|
| INCOME (UNEMPLOYMENT COMPENSATION) | $ 1070.33 |
| _____ LESS FEDERAL TAXES | $ 108.33 |
| NET INCOME | $ 962.00 |
| **LIVING EXPENSES** | |
| RENT/MORTGAGE ON 1987 PARDUE RD, RAYMOND MS | $ 1458.36 |
| LINE OF CREDIT | $ 300.00 |
| FOOD | $ 400.00 |
| FUEL COSTS | $ 350.00 |
| CLOTHING | $ 150.00 |
| MEDICAL/ THERAPY/ DENTAL (OUT OF POCKET ONLY) | $ 500.00 |
| HOUSEHOLD (MAID+CLEANING SUPPLIES) | $ 200.00 |
| PERSONAL GROOMING | $ 225.00 |
| UTLITIES | |
| ENTERGY | $ 400.00 |
| WATER | $ 40.00 |
| PROPANE | $ 50.00 |
| PHONE/INTERNET/TV | $ 560.00 |
| INSURANCE (HOME OWNERS) | $ 190.00 |
| INSURANCE (LIFE) | $ 200.00 |
| PROPERTY TAXES FOR 1987 PARDUE RD, RAYMOND | $ 165.00 |
| LAWN AND PROPERTY UPKEEP | $ 240.00 |
| PEST CONTROL | $ 80.25 |
| PET CARE/VETERINARY COSTS | $ 120.00 |
| CREDIT CARD PAYMENTS (BELK) | $ 75.00 |
| CREDIT CARD PAYMENTS (VICTORIA SECRET) | $ 50.00 |
| CREDIT CARD PAYMENTS (AMERICAN EXPRESS) | $ 750.00 |
| EDUCATIONAL EXPENSES (TO BEGIN 3/25/2019) FOR RETRAINING AND OBTAINING PROPERTY APPRAISAL LICENSE (CONTINUING ED $1299+ FINGERPRINTING $50+LICENSING APPLICATION & TESTING $1775---ALL FEES ANNUAL) | $ 260.33 |
| **TOTAL EXPENSES** | $ 8,223.94 |

I HEREBY CERTIFY THAT THE ABOVE LISTING OF INCOME AND EXPENSES IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

_____
ANGELA FISHER SILLS ASHLEY

SWORN TO THIS 1 DAY OF MARCH, 2019 BEFORE THE UNDERSIGNED NOTARY PUBLIC.

_____
BRENDA M. HOWELL, LSBA #1425

Divorce Forms\Custody - Motion to Modify Custody .wpd

13

The affidavit of living expenses submitted by Angela reflects a total monthly expense of $8,223.94 as the sum of the itemized expenses. That calculation is incorrect. When the itemized expenses listed are totaled, the actual total equals $6,763.94 and not $8,223.94. The first error that must be addressed before relying on the information contained in the affidavit, as the trial court did, is to correct the total expense figure to reflect $6,763.94.

***Standard of Living / Expenses***

The assignments of error asserted by Bryan relative to the amount of the interim spousal support award are as follows:

- The trial court erred in accepting at face value Ms. Sills' Affidavit of Living Expenses, without supporting documentation, and with contradictory testimony by Ms. Sills, and contradictory evidence as to those expenses.

- The trial court erred in including Ms. Sills' life insurance payments of $200 as it was shown prior to the trial court's ruling that Ms. Sills was paying life insurance on a policy owned by Mr. Ashley, that he cancelled in February 2018, and that she fraudulently continued to pay unbeknownst to Mr. Ashley – and which was ultimately cancelled in October 2018 – thereby at least reducing the actual "need" for that expense and the interim spousal support by a total of $3000.

- Notwithstanding its concerns for Ms. Sills' credibility the trial court should have disregarded the $300 Second Mortgage/Line-of-credit Payment on Ms. Sills' Mississippi home, as it was never a marital expense or an agreed upon expense to be paid out of the parties' marital funds, reducing the award of interim spousal support by a total of $4,500.

- The trial court erred in including Ms. Sills' credit card payments, in the calculation of interim spousal support, including the American Express payments of $750, thereby reducing the award by a total of $11,250 for the American Express card expense, and a total of $1,875 for Victoria's Secret and Belk Credit Cards.

Bryan and Angela enjoyed a very comfortable lifestyle during their brief marriage. The record shows that the couple travelled together to

Orange Beach, to Texas for hunting trips, and to New Orleans for Saints football games. Clearly there were financial benefits of being married to Bryan, which afforded Angela a lifestyle that she had not been enjoying independently. According to testimony and pleadings on behalf of Bryan, one of the primary reasons for the dissolution of the marriage was Angela's overspending once they were married.

The purpose of interim spousal support is to maintain the status quo for the claimant spouse, without unnecessary economic dislocation, until a final determination of support can be made. Bryan was clearly dissatisfied with the amount of money that was spent by Angela during the marriage. However, the purpose of interim support is so one spouse will not suffer a dramatic reduction in living standard while adjusting to an impending termination of the marriage. *King, supra.* As such, the trial court properly relied on the only evidence available to it which directly addressed the couple's spending habits and expenses during the marriage – Angela's affidavit of living expenses and Plaintiff's Exhibit 2. Those exhibits contained the only definitive evidence of the couple's standard of living, expenses, and spending habits during their brief marriage.

The trial court is faced with plotting a difficult journey in determining an amount of money necessary to provide for a lifestyle which is not dramatically different than that during a marriage, as it must decipher "wants" from "needs," expectations of one spouse as compared to the other, and reach a conclusion which projects the financial trajectory of disgruntled former spouses. The trial court is challenged with distinguishing between significant special occasions and trips, as compared to normal, everyday

15

financial circumstances. In the weeks and months following a wedding celebration it would not be uncommon for special occasion trips and expenses to flow more freely than would be expected on a consistent basis going forward. There are certain benefits that flow from getting married, rather than the long-term pattern which will become the norm of being married. If the divorce is sought immediately after such travels and events, regardless of how unique they may be or how long planned and saved for, the court must consider what would be a sustainable standard of living and what would be special circumstance and celebratory events in the early stages of marital bliss, however fleeting that may have been.

Bryan and Angela enjoyed a standard of living which included luxuries not fully enjoyed by many others. The law provides that Angela should not be expected, during the period for which interim spousal support is intended, to experience dramatic changes in her standard living experienced during the marriage. That determination includes a consideration of what is reasonable.

Included in Angela's itemized monthly recurring living expense list is $3,383.61 for expenses associated with her home, including the mortgage payment ($1,458.36), taxes ($165), insurance ($190), all utilities associated with the home (electric of $400, water of $40, propane of $50, and phone/internet/tv of $560), monthly lawn and property upkeep ($240), pest service ($80.25), and maid services ($200). She also includes a clothing allowance ($150), medical/dental expenses ($500), personal grooming ($225), and pet care/veterinary costs ($120).

As noted above, the corrected figure of all listed monthly expenses is $6,763.94, which includes all the above listed items in addition to the disputed amounts of the line-of-credit on Angela's residence ($300), life insurance premiums on Bryan's life ($200), and credit cards to Belk ($75), Victoria Secret ($50), and American Express ($750). From this corrected figure of $6,763.94, there is an offset for Angela's unemployment income of $962 per month, for a corrected monthly living expense from Angela of $5,801.94, before addressing any disputed items.

**Life Insurance Policy**

Bryan argues that Angela's affidavit of living expenses improperly includes $200 per month for life insurance premium payments. Bryan testified that he cancelled a life insurance policy – of which Angela was a beneficiary – and Angela continued to make payments on the life insurance policy. Bryan testified that Angela changed the address on the policy to her home address in Mississippi, and he was not aware that she continued to make the payments. Bryan introduced evidence of changes made to the life insurance policy through the insurance company's website, including Angela being renamed as a beneficiary after she had been removed and replaced with his two adult children. Angela admitted to making changes to the policy, including the change of mailing address to her home in Mississippi and replacing herself as a beneficiary. Angela testified that she made the changes to the policy pursuant to a court order that prohibited changes to any life insurance policies during the pending divorce proceedings. Angela testified that she was restoring herself as beneficiary on the policy because Bryan had violated the court's order by removing her.

The record shows that the life insurance policy in question was not cancelled while the divorce was pending. The record is not clear as to whether Bryan truly intended to cancel the policy, or whether he simply intended to remove Angela as a beneficiary of the policy. It is evident that the life insurance policy premium ($236 per month) was paid by someone each month following the parties' separation. Considering these facts, we find that the trial court abused its discretion in assigning the $236 monthly premium for Bryan's life insurance policy as a $200 monthly living expense for Angela. Regardless of the beneficiary designation, Bryan's life insurance policy premium is not attributable to Angela as a living expense upon their separation. As such, we remove from consideration for purposes of interim spousal support any expense associated with the life insurance policy in question on the life of Bryan.

**Mississippi Home Line-of-Credit Payment**

Also included in Angela's affidavit of living expenses is $300 for a line-of-credit associated with her separate property in Mississippi. Bryan paid the mortgage for that property for the first year and a half of their marriage, but he argues that Angela's testimony was contradictory as to whether he previously paid the $300 per month listed in her affidavit of living expenses. Bryan denies he ever agreed to pay the line-of-credit, although he does admit that he paid for the mortgage ($1,458.36 per month) on Angela's Mississippi home for a year and a half. Bryan advised Angela he would not pay it for longer than that amount of time, and he contends that Angela's adult son was to assume the $300 payment upon his moving into the home in August 2017. Bryan argues that Angela's son moved in the

home and assumed the payment. Angela, however, requested the trial court accept the $300 line-of-credit payment as a personal living expense of hers and included it in the calculation of her interim spousal support.

Angela testified that this second note on her Mississippi home was the result of acquiring an additional loan to conclude construction on the house, in addition to her 20-year mortgage. Angela testified that her son started paying the $300 note when he got married and moved into the house around August of 2017. Angela's son testified and confirmed that he lived in his mother's Mississippi house following his wedding and that he paid the $300 note as his rent payment to his mother while he lived there.

The trial court, in accepting the entirety of Angela's affidavit of living expenses, included the $300 note as a living expense in its interim spousal support award to Angela. The record is not clear as to whether Bryan actually paid the $300 note or agreed to pay the note during his marriage. Because the record establishes that Angela's son was responsible for the $300 note beginning in August of 2017, prior to the couple's separation, and that he did in fact live in the home and pay the note, we find that the trial court was manifestly erroneous and abused its discretion by including the $300 monthly payment for the line-of-credit in the calculation of the interim spousal support award to Angela. Bryan should not be cast for payment of the monthly line-of-credit payment of $300 for Angela's residence, in which her adult married son was residing. We remove the $300 per month line-of-credit from consideration in fixing Angela's interim spousal support.

**Credit Cards**

19

Embedded in the living expenses detailed by Angela are monthly expenses of $75 to Belk, $50 to Victoria's Secret, and $750 to American Express as credit card payments. These credit cards represent a **method of payment**, rather than an actual expense like every other expense itemized on Angela's affidavit. The trial court noted "[t]he credit card payments were not itemized and may include some expenses listed elsewhere in the list." A review of the living expenses Angela provided does not include any glaring absence of monthly living expenses that would need to be paid for by credit card. There is nothing absent from the itemized list of expenses provided by Angela, especially considering the fact that there was a separate court order directing Bryan to provide Angela with a vehicle, vehicle insurance, and medical insurance for a period of time.

Neither party introduced into evidence itemized credit card statements for Belk, Victoria's Secret, or American Express. The only credit card statements that were introduced at trial were statements from a Chase Visa card that belonged to Bryan and was used for both business and personal expenses during the marriage. Bryan argues that Angela failed to meet her burden of proof in establishing her need for the payment of credit card expenses because she did not provide an itemization of the alleged needs that the credit card payments covered. We agree.

Angela testified that she used an American Express credit card for household expenses for the couple. Angela also testified that she only used Bryan's Chase Visa card on rare occasions when her American Express was not accepted somewhere and with Bryan's express permission.

At trial, regarding the American Express expenses included in Plaintiff's Exhibit 2, Bryan testified:

A: Yeah, at that time, her American Express was about thirty-two thousand.

Q: Okay.

A: And I estimated that a third of that was me, meaning truck stop expense or whatever –

Q: Okay.

A: -- she might have done for me.

The record does not contain any information or testimony regarding Angela's spending on a Belk or Victoria's Secret credit card, aside from their inclusion on Angela's affidavit of living expenses. Angela's needs in the context of an interim spousal support award are defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the payor spouse's ability to pay. Angela had the need, and Bryan had the ability to pay; however, the record before us is devoid of any basis to support an award for prospective combined monthly credit card payments for unidentified living expenses above and beyond the itemized list Angela provided. Such an award by the trial court is manifestly erroneous, and we remove those expenses from consideration in determining the amount of the lump sum interim spousal support.

In all other respects, the remaining items and amounts included in the Angela's itemized list and that the trial court relied upon in reaching its judgment are affirmed. We recognize the mathematical calculations of per diem values for items, as well as varying lengths of interim spousal support

obligations, unemployment benefits, and educational expenses could result in mathematical minutia. We therefore assign to other living expenses the variations resulting from rounding the figures and lengths of time to reach our conclusion below, and amend the judgment of the trial court as follows:

| Living Expenses | ORIGINAL | AMENDED |
|---|---|---|
| Rent | $1,458.36 | $1,458.36 |
| **Line of Credit** | **$300.00** | **$0.00** |
| Food | $400.00 | $400.00 |
| Fuel Costs | $350.00 | $350.00 |
| Clothing | $150.00 | $150.00 |
| Medical/Therapy | $500.00 | $500.00 |
| Household/Maid | $200.00 | $200.00 |
| Personal Grooming | $225.00 | $225.00 |
| Utilities - Electric | $400.00 | $400.00 |
| Utilities - Water | $40.00 | $40.00 |
| Utilities - Propane | $50.00 | $50.00 |
| Utilities - Phone/internet | $560.00 | $560.00 |
| Insurance - Homeowners | $190.00 | $190.00 |
| **Insurance - Bryan's Life** | **$200.00** | **$0.00** |
| Property Taxes | $165.00 | $165.00 |
| Lawn and Property Upkeep | $240.00 | $240.00 |
| Pest Control | $80.25 | $80.25 |
| Pet Care/Vet | $120.00 | $120.00 |
| **Belks Credit Card** | **$75.00** | **$0.00** |
| **Victoria Secret Credit Card** | **$50.00** | **$0.00** |
| **American Express** | **$750.00** | **$0.00** |
| Education Expenses | $260.33 | $260.33 |
| | | |
| **TOTAL** | **$8,223.94** | **$5,388.94** |

In summary, the lump sum interim spousal support included in the judgment of the trial court is amended to reflect new calculations of $5,388.94 per month for 14 months, which equals a gross amount of $75,445.16. That amount is subject to a reduction of 10 months during this period of unemployment benefits received by Angela of $962 per month for a total of $9,620. As a result, the new total lump sum interim spousal support award to Angela is amended to $65,825.16. As amended, the lump sum interim spousal support award is affirmed.

22

## CONCLUSION

Considering the foregoing, the judgment for lump sum interim spousal support in favor of Angela Fisher Sills Bryan is amended to $65,825.16 and, as amended, is hereby affirmed.  All costs of this appeal are to be shared equally by Bryan Ashley and Angela Fisher Sills Ashley.

**AMENDED AND AFFIRMED.**